Francis N. Pécora, J.
The petitioner, a transsexual, petitioned this court for an order (1) to permit petitioner to change his name from that appearing on his birth certificate to one assumed by petitioner, (2) to direct the Bureau of Records and Statistics of the Department of Health of the City of New York to change his birth certificate to reflect a change from male gender to female gender or, in the alternative, (3) to direct that a copy of an order forthcoming from this court be physically attached to his birth certificate now on file with the Department of Health.
Matters over which the Civil Court of the City of New York has jurisdiction are set forth in article 2 of the New York City Civil Court Act. The petitioner’s application for a direction by this court to the Department of Health to make a physical alteration of the birth certificate is in the nature of a writ of mandamus. Such relief can only be obtained by a special proceeding in the Supreme Court of the State of New York pursuant to CPLR article 78. Although the Civil Court has some incidental equity jurisdiction, it is within well-defined statutory limitations and certainly does not include matters seeking the relief sought *814 herein. To this extent, the application of the petitioner is denied.
The remainder of the petitioner’s application demands much closer attention. That an individual may assume any name, absent fraud or an interference with the rights of others, is a right that existed at common law. This right is not restricted or impaired by article 6 of the Civil Rights Law. As was stated by the court in Matter of “ Shipley ” (26 Misc 2d 204, 208): “ The Civil Rights Law provisions establishing judicial procedure for change of name are in addition to, and not in substitution for, the common-law methods of change ”.
The court, after independent research, has concluded that the within application is one of first impression. There have been many applications presented to this court for a change of name under article 6 of the Civil Rights Law, but none wherein the petitioner has sought a change of name from an obviously “ male ” name to an obviously “ female ” name, or vice versa.
The instant matter presents problems of immense proportions, not only from a medico-legal viewpoint, but especially as it affects our society as a whole. Indeed, with our present-day “ enlightenment ” toward those members of our society who, for one reason or another, do not, or cannot, conform to the “ norm,” and with the rapid strides of the medical profession made within the last few years, which have brought a measure of understanding to the social problems of these so-called “ nonconformists,” it is understandable that our courts will, more and more, be asked to entertain petitions of this type. Perhaps the easiest method of disposing of this application would be merely to deny the petition on the grounds that the instant relief prayed for has never before been granted by this or any other court of this State. To do so would, in effect, sweep the problem under the proverbial rug and defer the determination until some time “in futuro.” It is the court’s opinion that any difficulty presented herein is not so much in the nature of the problem itself, but in trying to apply, perhaps inadequately, static rules of law to situations such as that presented herein, which perhaps merit new rules and/or progressive legislation.
For purposes of clarification, the court, of necessity, was compelled to examine not only into the “ person ” of the petitioner, but also into the nature of the operation which “ changed ” said individual. The petitioner is a transsexual. The petitioner is not a transvestite. ‘1 By definition, the transvestite is content to dress in the clothing of the opposite sex. The transsexual, on the other hand, will be satisfied only if he can become converted into a sexually functioning person of the opposite sex.” (See *815 Wollman, Surgery for the Transsexual, Journal of Sex Research, vol. 3, No. 2, pp. 145-147.) Sex-reassignment operations have been performed by many surgeons in many cities, including the United States. Dr. Leo Wollman, an acknowledged authority in the field of transsexualism, testified at a closed hearing before this court. According to Dr. Wollman, the procedure used is to denude the penis by rolling back its epithelial cover and to use this invaginated sheath as a sensitive “vagina.” The erotic sensation is retained, and vaginal orgasm is made possible.
The petitioner herein had a surgical corrective sex change (sex-reassignment) on September 14,1966. The operation was performed in Casablanca. All male organs were removed. There is no chance that this petitioner will ever again function as a male either procreatively or sexually. The petitioner is now capable of having sexual relations as a woman although unable to procreate. “ Her ” physiological orientation is complete.
Among the many questions arising from this somewhat perplexing situation is one of fundamental importance. Is the gender of a given individual that which society says it is, or is it, rather, that which the individual claims it to be! The answer is not easily arrived at. It would be very simple to state that the gender of an individual has always been that which society says it to be. But to so state would be to disregard the enEghtenment of our times. Let us examine the situation on a practical basis: A child is born. The doctor examines the child, perhaps carefully, perhaps only in a perfunctory manner. In any event, the doctor decides that the child is a “ male.” He fills out the birth certificate, which is duly recorded with the Department of Health, designating such child as a “ male.” For statistical purposes, and as far as society is concerned, this child is a “male.” But, occasionally, a mother gives birth to a genetic female with a hypertrophied clitoris which, together with the gross appearance of the swollen labia, may lead to the erroneous diagnosis of a “male” newborn (pseudo-hermaphroditism). Of course, this physical sexual distinction may he corrected early in life by reparative surgery. But the point is that society, through the agency of this doctor, and absent reparative surgery, will continue to classify this individual as a “ male,” where, in fact, the true gender is “ female.” To go a step further, must this individual, in later life, again absent reparative surgery, conform to the dictates of society and comport himself as a “ male,” or should this individual rather be permitted to carry out her role in life as a true “ female ”!
*816 The court is cognizant of the fact that the transsexual, anatomically, does not present the same problem as that of the pseudo-hermaphrodite. His social sex is determined by his anatomical sex. But again, by definition, his psychological sex, as distinguished from his anatomical sex, is that of the opposite sex. Absent surgical intervention, there is no question that his social sex must conform with his anatomical sex, his mental attitude notwithstanding. But once surgical intervention has taken place, whereby his anatomical sex is made to conform with his psychological sex, is not his position identical to that of the pseudo-hermaphrodite who has been surgically repaired? Should not society afford some measure of recognition to the altered situation and afford this individual the same relief as it does the pseudo-hermaphrodite ?
It has been suggested that there is some middle ground between the sexes, a “ no-man’s land ” for those individuals who are neither truly “ male ” nor truly “ female.” Yet the standard is much too fixed for such far-out theories. Bather the application of a simple formula could and should be the test of gender, and that formula is as follows: Where there is disharmony between the psychological sex and the anatomical sex, the social sex or gender of the individual will be determined by the anatomical sex. Where, however, with or without medical intervention, the psychological sex and the anatomical sex are harmonized, then the social sex or gender of the individual should be made to conform to the harmonized status of the individual and, if such conformity requires changes of a statistical nature, then such changes should be made. Of course, such changes should be made only in those cases where physiological orientation is complete.
The court has read, with great care, Matter of Anonymous, decided in May, 1966 (Matter of Anonymous v. Weiner, 50 Misc 2d 380). In that case, the petitioner instituted an article 78 proceeding in the nature of mandamus, for an order directing the Director of the Bureau of Records and Statistics of the Department of Health of the City of New York to change the sex designated on the petitioner’s birth certificate from “ male ” to “ female.” The learned court refused, in that case, to substitute its views for those of the administrative body. However, the court stated ‘ ‘ The present proceeding has not been instituted nor has it been considered by the court as an application for a change in name in compliance with section 61 of the Civil Rights Law ” (Matter of Anonymous v. Weiner, supra, p. 385).
One of the conclusions reached by a committee of the New York Academy of Medicine was “ ‘ the desire of concealment of *817 a change of sex by the transsexual is outweighed by the public interest for protection against fraud ’ ” (Matter of Anonymous v. Weiner, supra, p. 383). This court is in complete disagreement with the conclusion reached by the learned committee. A male transsexual who submits to a sex-reassignment is anatomically and psychologically a female in fact. This individual dresses, acts, and comports himself as a member of the opposite sex. The applicant appeared before this court and, were it not for the fact that petitioner’s background was known to the court, the court would have found it impossible to distinguish this person from any other female. It would seem to this court that the probability of so-called fraud, if any, exists to a much greater extent when the birth certificate is permitted, without annotations of any type, to classify this individual as a“ male ” when, in fact, as aforesaid, the individual comports himself as a “ female.”
It has further been stated (p. 382) that “‘male to female transsexuals are still chromosomally males while ostensibly females ’ ”. Nevertheless, should the question of a person’s identity be limited by the results of mere histological section or biochemical analysis, with a complete disregard for the human brain, the organ responsible for most functions and reactions, many so exquisite in nature, including sex orientation? I think not.
In addition to the foregoing, there is a serious question in the court’s mind whether the denial of the relief requested by the petitioner herein would not be a violation of his civil rights.
Accordingly, the application of the petitioner for a change of name is granted, and the petitioner is further directed to file a copy of the order to be entered herein with the Department of Health, and said Department of Health is directed to attach a copy of said order to the birth certificate of the petitioner.