**Petition of Michael Herbert DENGLER to change his name to 1069.**

**Civ. No. 9205.**

Supreme Court of North Dakota.

Nov. 5, 1976.

Michael Herbert Dengler, pro se.

SAND, Justice.

Petitioner, Michael Herbert Dengler, appealed from an order of the first judicial district court, Cass County, North Dakota, denying his petition made pursuant to Chapter 32–28, North Dakota Century Code, for a change of name to 1069.

Section 32–28–01, NDCC, gives authority to the district court to change the names of persons and cities within the state.

Section 32–28–02, NDCC, as to contents of petition and proof, provides as follows:

"Any person desiring to change his or her name may file a petition in the district court of the county in which such person may be a resident, setting forth:

"1. That the petitioner has been a bona fide resident of such county for at least six months prior to the filing of the petition.

"2. The cause for which the change of the petitioner's name is sought.

"3. The name asked for.

The judge of the district court, upon being duly satisfied by proof in open court of the truth of the allegations set forth in the petition _and that there exists proper and reasonable cause for changing the name of the petitioner_ and that thirty days' previous notice of the intended application has been given in some newspaper printed in such district, shall order a change of the name of such petitioner and direct that such order be entered by the clerk in the journal of the court. The court, however, may waive publication of the notice hereinbefore required when the proposed change relates only to a first or given name as distinguished from a surname." [Underscoring ours.]

The petitioner, in support of his request, states that he was adopted and given the name Michael Herbert Dengler; that his personal philosophy has experienced expansion and quests for answers to various philosophies, including recognized schools of thought as well as his own personal philosophy, which he has adapted from those of other schools of thought and other cultures; that a person's name should be a mark of indicium which corresponds to and is a verbal and graphic manifestation of the person's philosophy. This is followed by petitioner's explanation of the characters:

"The first character, 1, stands for my concept of nature which manifests itself as one individual among the various forms of life. I stand as a single entity amongst millions of other entities, animate and inanimate. But yet even though I am an entity unto myself, I am part of the whole of life which is one. I am one; life is one; and together we are one.

"The second character, 0, shows my relationship with time in movement through life; I feel that I recognize a

past, experience a present, and am aware of a future with equal regard. I am therefore zero with respect to my march on the road of life.

"The third character, 6, is equal to the relationship I have with the universe in my understanding of space of my spatial occupancy through this life.

"The fourth and final character, 9, stands for the relationship I have to essence in the difference in the meaning when actualizing the spatially ever present nature of life. This final digit is like a string which surrounds the entirety of the previous three digits and explains the first three digits' concepts as they interact among each other to produce my philosophy."

Petitioner concluded with:

"The interaction of these phenomenon, which are represented by these numerals, creates an identity which is me. The only way that this identity can be expressed is 1069." [Underscoring ours.]

Petitioner gave no authority for the meaning of the characters, and therefore we assume the meaning given is his.

Black's Law Dictionary, DeLuxe Fourth Edition, defines "name" as follows:

"The designation of an individual person, or of a firm or corporation."

and then continues from a cited case, as follows:

"A person's 'name' consists of one or more Christian or given names and one surname or family name. *Blakeney v. Smith,* 183 Miss. 151, 183 So. 920, 921. It is the distinctive characterization in words by which one is known and distinguished from others, and description, or abbreviation, is not the equivalent of a 'name.' *Putnam v. Bessom,* 291 Mass. 217, 197 N.E. 147, 148. Custom gives one his father's family name, and such praenomina as his parents choose to put before it, but this is only general rule, from which individual may depart, if he choose. *In re Cohen,* 142 Misc. 852, 255 N.Y.S. 616, 617."

At common law, a legal "name" consisted of a given name and of a surname or family name.

One's "name" usually consists of at least a given, or first, name, and a surname, or family name, which merely as a matter of custom is passed along from father to his children, and when his daughters marry, by custom, each assumes the surname of her husband. In 65 C.J.S. *Names* § 1, p. 1, it is stated, "A name is a word or words, designation, or appellation used to distinguish a person or thing or class from others; and, more particularly, one or more words used to distinguish a person." See Words and Phrases for judicial definition of "name," Volume 28.

By the common law, since very early times, a legal name has consisted of one Christian or given name, and of one surname, patronymic, or family name, the given name being used first and the surname last. 65 C.J.S. *Names* § 3, p. 3.

The same authority on subsequent pages also states that the prefixes "Mr." and "Mrs." and titles are not part of the name, but are mere titles and are descriptive of the person referred to. It further states that a description does not constitute a name.

For similar definitions, see 57 Am.Jur.2d *Name* § 1, page 275.

In *Putnam v. Bessom,* 291 Mass. 217, 197 N.E. 147, 148 (1935), the court said:

"The name of a person is the distinctive characterization in words by which he is known and distinguished from others." [Underscoring ours.]

This is followed by an impressive list of citations.

"A person's name is the mark or indicium by which he is distinguished from other individuals." *Riley v. Litchfield,* 168 Iowa 187, 150 N.W. 81, 83 (1914). If this were the end of the definition of a name, a number could possibly qualify, but the definition continues by stating:

"By universal practice or custom, the designation is composed of the Christian or given name and a surname. The one is

given at birth or at baptism, the other is the patronymic derived from the common name of parents. The Christian or first name is in law and is denominated the proper name."

This appears to be the prevailing law now. See 65 C.J.S. *Names* § 1, page 3.

In *Nappier v. Jefferson Standard Life Insurance Co. and Jefferson Standard Broadcasting Co., a subsidiary of Standard Life Insurance Co.,* 213 F.Supp. 174 (D.C.S. C.1963), the court had under consideration whether or not the giving of stage names or assumed names of victims of incident of rape constituted a violation of a statute prohibiting the publication of the name of any woman or child upon whom the crime of rape or assault had been committed. The court said:

"The word 'name' as set forth in the statute is not ambiguous, does not bear two or more constructions, and is not of such doubtful or obscure meaning that reasonable minds may disagree as to its meaning. A person's 'name' consists of one or more Christian or given names and one surname or family name."

The court concluded that by giving stage names or the assumed names did not constitute violation. *In Application of Earl Green for leave to assume the name of: Merwon Abdul Salaam,* 54 Misc.2d 606, 283 N.Y.S.2d 242 (1967), the court had under consideration the proposed change of name for religious purposes. The court said:

"The Constitution permits complete freedom of religion and worship, and whatever charm the new religiosity may have for him is not for this court to inquire; but to adopt such a strange and unfamiliar name gives one pause."

The court continued,

"The constitutional right, however, bears no reasonable relationship to a change of name nor is a 'change of name * * * an essential part of the practice of religion' (see *Application of Wing,* 4 Misc.2d 840, 157 N.Y.S.2d 333)."

The petition was denied.

■ In the instant case petitioner relied upon the First Amendment to the United States Constitution for the name change claiming under the freedom of speech provision he had a right to change his name. Petitioner, however, failed to give any convincing reason in support of his argument, and we are not aware of any.

In *In re M,* 91 N.J.Super. 296, 219 A.2d 906, the court had under consideration the question of changing a child's name to that of the putative father, who was married to another woman who objected to the change. The court said:

"Circumstances of special significance that would militate against the granting of such an application would be an unworthy motive, the possibility of fraud on the public, or the choice of a name that is bizarre, unduly lengthy, ridiculous or offensive to common decency and good taste."

The court concluded that the application in this case, based on the testimony given, would not come within the foregoing provisions and granted the application.

■ After examining the various cases and legal texts, we are satisfied that "a name is a word or combination of words by which an individual is known or designated."

Webster's Third New International Dictionary, Unabridged, defines "name" as

"A word or sound or a combination of words or sounds by which an individual or a class of individuals (as persons or things) is regularly known or designated."

The same authority defines "legal name" as follows:

"The designation of a person recognized by the law as correct and sufficient and constituting under common law one given name followed by the family name and in modern times requiring or permitting one or more middle given names or initials in abbreviation thereof and upon the marriage of a female the substitution of her husband's family name for her maiden or former family name."

Common knowledge tells us that a word consists of letters and may also consist of

characters or symbols in addition to letters. Webster's Dictionary defines it as a written or printed character or combination of characters representing a spoken word and that it is a speech sound or a series of speech sounds that symbolizes and communicates a meaning without being divisible into smaller units capable of independent use. We have not found any definition which states that a word may consist solely of numbers or symbols. We recognize that a verbalized number or symbol would be a word.

The petitioner is not asking to change his name to the words "one zero six nine," but rather to an Arabic cardinal number or numbers. The Arabic symbol "1" has a name which is the word "one." A number may mean a numeral, a figure, a digit, or an integer, and, as stated earlier, it may be referred to in symbol or character form, or in the form of a word.

If the proposed change is written or printed it would simply appear in Arabic symbols, 1069; but if it is verbalized would it be "one thousand sixty-nine," "one naught six nine," "one zero six nine," or would it be "ten sixty-nine"? Petitioner, during the oral argument, stated how he would verbalize it, but this would not eliminate the problem because other persons will not know this.

■ Several courts have held that the statute prescribing a method for changing a name does not abrogate the common law right of an individual to change his name without application to the courts. See 65 C.J.S. *Names* § 11(2), page 32. A different result is reached where the statute provides the exclusive method of changing a name. We do not consider the North Dakota law to be exclusive, but we need not resolve this question here. It is only when the statute is not exclusive that common law in the absence of fraud or other like evasion of obligations permits the free use of any name a person may choose. *Green, supra,* and *In re Anonymous,* 57 Misc.2d 813, 293 N.Y.S.2d 834 (1968).

In *In re Taminosian,* 97 Neb. 514, 150 N.W. 824 (1915), the court had under consideration the application of John I. Taminosian to reclaim the name of Mohammed Nadir under a statute which provided in part: ". . . that there exists proper and reasonable cause for changing the name of the petitioner." The court, after having heard the various names under which the petitioner had been known, observed that he had a wife, two daughters, and one son, and that the wife protested against the change of his name. The wife and children were citizens of the State and as such they were entitled to the protection of the laws and customs governing society. The court affirmed the district court's denial of the application for name change. There was, however, a dissenting opinion which took the position that the court should grant the change unless it were forbidden by law.

In *In re Snook,* 2 Hilt 566 (N.Y.1859), the court had under consideration a petition to change the name from Snook to Pike. The petitioner stated that Pike was the English word for the Dutch or German name "Snook" and that he had changed his name to Pike and had done business under such name and enjoyed the good will of that name, and in addition he was proposing to enter into a copartnership with a gentleman who objected to the name "Snook" appearing in the business title or name of the firm. The Act of 1847 under which the name change was sought authorized any person of full age residing in the State to assume another name if the judge is satisfied that the applicant will derive any pecuniary benefit from assuming another name. The court gave an interesting didactic dissertation on the derivatives of some ethnic names, a portion of which follows:

"The insufficiency of the Christian name to distinguish the particular individual, where there were many bearing the same name, led necessarily to the giving of surnames; and a man was distinguished, in addition to his christian name, in the great majority of cases, by the name of his estate, or the place where he was born, or where he dwelt, or from whence he had come, as in the name of Washington, originally Wessyngton, which, as

its component parts indicate, means a person dwelling on the meadow land, where a creek runs in from the sea, or else from his calling, as John the smith, or William the tailor, in time abridged to John Smith and William Taylor. And as the son usually followed the pursuit of the father, the occupation became the family surname, or the son was distinguished from the father by calling him John's-son, or William's-son, which, among the Welsh, was abridged to s, as Edwards, Johns or Jones, or Peters, which, as familiar appellations, passed into surnames. The Normans added Fitz to the father's christian name, to distinguish the son, as Fitz-herbert, or Fitzgerald. And among the Celtic inhabitants of Ireland and Scotland, where each separate clan or tribe bore a surname, to denote from what stock each family was descended, Mac was added to distinguish the son, and O to distinguish the grandson; and generally, where names were taken from a place, the relation of the individual to that place was indicated by a word put before the name, like the Dutch *Van* or French *De*, or a termination added at the end, which additions were in time merged into and formed but one word, until, from these various prefixes and suffixes, numerous names were formed and became permanent. So, as suggested, something in the appearance, character, or history of the individual gave rise to the surname, such as his color, as black John, brown John, white John, afterwards transposed to John Brown, &c.; or it arose from his bulk, heighth, or strength, as Little, Long, Hardy, or Strong; or his mental or moral attributes, as Good, Wiley, Gay, Moody, or Wise; or his qualities were poetically personified by applying to him the name of some animal, plant, or bird, as Fox or Wolf, Rose or Thorn, Martin or Swan; and it was in this way that the bulk of our surnames, that are not of foreign extraction, originated and became permanent." [1]

The court noted that in order to grant the name change the judge must be judicially satisfied, upon proper proof, that the applicant or petitioner will derive a pecuniary benefit if the name change is accomplished. The court found no pecuniary benefit and denied the petition.

The court concluded by stating:

"If, as stated in the petition, he adopted it some years ago, engaged in business by that name, and is known among his business acquaintances and customers by that designation, there is no reason why he should not continue to use it. Any contract or obligation he may enter into, or which others may enter into with him by that name, or any grant or devise he may hereafter make by it, would be valid and binding; for, as an acquired and known designation, it has become as effectually his name as the one which he previously bore. I have no hesitation, therefore, in saying that I think he may lawfully use it hereafter, in all transactions, as his name or designation." [2]

In *Ogle v. Circuit Court, Tenth Judicial District,* 227 N.W.2d 621, 624 (S.D.1975), the court said:

"The great weight of authority recognizes that at common law one is free to change his name without legal proceedings and that statutory name change procedures do not supplant this right but aid it by the official recordation of those changes. This right is generally conditioned only on the absence of fraudulent purposes. [Citations omitted.]"

---

1. We are inclined to believe New York at the time may not have had the Scandinavian population North Dakota has, which accounts for the absence of the Scandinavian names in the discussion. However, we hasten to add that common knowledge tells us that the Scandinavian names, such as Paulson, actually means son of Paul, Johnson, the son of John, Pederson, son of Peder, etc. Also, the name Erickstad refers to a location, such as Erick's state or province from which the inhabitants took the name.

2. The statute in question was substantially changed, materially enlarging the conditions permitting a person to assume another name judicially.

The court continued by stating that "courts have largely encouraged the granting of such petitions in order to secure the advantages of accurate record keeping. . . . But the granting of these applications is not automatic." Name change statutes similar to the one in South Dakota have ordinarily been held to vest discretion in the trial court. The statutory requirement "that there exists proper and reasonable cause for changing the name" clearly vests the trial court with a great degree of judicial discretion. Section 32–28–02, NDCC, the statute involved in the instant case, is in this respect similar to the South Dakota statute.

Even though the South Dakota court in *Ogle, supra,* said

"We prefer to adopt a rule which requires that some substantial reason exist to justify the trial court's refusal to grant the petition for name change,"

which we do not fault, we nevertheless are not committed to the proposition that a name change to anything, no matter what, should be governed by such a rule. We are satisfied that the South Dakota court had in mind only a name change to another name and not a change from a name to a number.

The statutes under which the courts authorize a name change are generally construed as giving the court discretionary authority. 110 A.L.R. 219.

 We are satisfied that the Legislature intended the North Dakota courts to exercise sound discretion when it provided in § 32–28–02, NDCC, that the application, amongst other things, be required to set forth "that there exists proper and reasonable cause for changing the name of the petitioner."

Innovative ideas, even though bordering on the bizarre, are frequently encouraged and may be protected by the law and the courts,[3] but to use the court or law to impose or force a number in lieu of a name upon society is another matter. The law may permit a person to use a number but

will not force its acceptance. Therein lies the significant difference.

 We are satisfied that the Legislature in giving authority to the courts to change a name had in mind a name as understood and defined by common law and did not include change from a name to a number.

If § 32–28–02, NDCC, were amended by either the Legislature or by the initiative process so as to provide for a name change to a number we would have a different situation.

For the foregoing reasons, we do not believe that the trial court abused its discretion, and the order of the trial court is in all things affirmed.

---

3. Copyrights, patents, and trade names may be protected by law by following the appropriate procedures.