**In re Brian HARRIS, a/k/a Lisa Harris, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1997.
Filed Dec. 11, 1997.

Mary Schellhammer, Johnstown, for appellant.

Before POPOVICH, SAYLOR and OLSZEWSKI, JJ.

OLSZEWSKI, Judge:

As Tammy Wynette so aptly observed, sometimes it's hard to be a woman. This is especially true in the instant matter, which calls this Court to decide the case of Brian Harris, a thirty-nine-year-old man who, for the past twenty-two years, has lived as a woman. During this time, petitioner has consistently dressed and appeared in public as a female and has assumed the name "Lisa." In addition to his years of intensive psychological counseling, petitioner has undergone a number of medical procedures designed to make himself appear more feminine.[1] Specifically, petitioner receives routine estrogen hormone therapy and has had permanent reconstructive facial surgeries as well as breast implants. Although petitioner desires to have the sex reassignment surgery which involves the removal of the male genitalia and the construction of female genitalia, financial constraints have thus far made reassignment unavailable.

On April 30, 1996, petitioner filed an unopposed petition for name change in accordance with the statutory requirements of 54 Pa. C.S.A. § 701 *et seq.* Pursuant to this petition, a hearing was held on September 16, 1996, before the Honorable Gerard Long of the Court of Common Pleas of Cambria County. The first witness to testify was Dr. Constance Saunders, petitioner's counselor of twenty years. Dr. Saunders testified that, in her expert medical opinion, petitioner's desire to live as a woman was permanent and unassailable. In support of this opinion, Dr. Saunders relied upon petitioner's long history of living as a woman and the extensive surgical measures he had undergone in order to present himself more convincingly as a female. Additionally, Dr. Saunders testified that petitioner's hormonal makeup was naturally more female than male.

When asked whether the name change would benefit petitioner, Dr. Saunders testified that, both professionally and personally, the name change would be beneficial. Because of petitioner's outwardly feminine appearance, Dr. Saunders testified, he often-times encounters problems when required to present official identification. That is, the disparity between petitioner's female appearance and the male name on his license leads to confrontations and allegations of deceit. In fact, Dr. Saunders regularly accompanies petitioner to appointments in order to vouch that petitioner is, in fact, a man. Personally, Dr. Saunders testified that allowance of the name change would provide petitioner with a degree of dignity that is presently lacking in his life and, additionally, would afford an affirmance of petitioner's belief that he is genetically and hormonally more female than male.

Following Dr. Saunders testimony, petitioner briefly testified. In essence, petitioner stated that his desire to have his name legally changed was twofold. First, petitioner stated that he has used the name "Lisa" socially for over twenty years and that his gender identification is completely female. Additionally, petitioner swore that he desired additional surgeries, including reassignment, but that at present the costs of such procedures were prohibitive. Secondly, petitioner stated that the change of name would result in less confusion for those people requesting official identification from him in addition to eliminating the personal embarrassment that petitioner feels when he is forced to adamantly and repeatedly aver that he is a man.

At the close of testimony, the court reserved its decision. By order dated September 19, 1996, the court denied the petition for change of name. Petitioner filed a notice of appeal on October 4, 1996. At the same time, petitioner filed a motion for reconsideration. On March 27, 1997, the court *en banc* denied the motion for reconsideration. In support of its September 19, 1996 order, the court *en banc* noted that, while no appellate court in Pennsylvania has previously addressed the issue of under what circumstances a transsexual may legally change his or her name, three of our courts of common pleas have spoken to the issue.

---

1. Although there was testimony presented at the hearing in the instant matter that petitioner's hormonal makeup is more female than male, we will use masculine pronouns when referring to petitioner until such time that the name change is legally operative.

■ We now consider petitioner's appeal of the September 19, 1996 order. Preliminarily, we note that our Supreme Court long ago articulated the general standard to be applied to petitions requesting name changes. After determining that the petitioner has complied with the necessary statutory prerequisites, the court must hold a hearing after which the court may, at its discretion, grant or deny the petition. In making its determination, the court must act in such a way as to "comport with good sense, common decency and fairness to all concerned and to the public." *Petition of Falcucci*, 355 Pa. 588, 592, 50 A.2d 200, 202 (1947).

This standard has been applied with varying results by the three courts of common pleas which have addressed the instant issue. *In re Dickinson*, 4 D & C3d 678 (1978), involved the petition of a post-operative transsexual who wished to have her name legally changed from "Robert" to "Roberta." After two years of living as a female and receiving hormonal and psychological therapy, the petitioner underwent reassignment surgery. Following the surgery, the petitioner requested the legal name change. Holding that allowing the name change would "give legal effect to a *fait accompli*," the court granted the petition. *Id.* at 680 (citing *M.T. v. J.T.*, 140 N.J.Super. 77, 90, 355 A.2d 204, 211 (1976)).

Conversely, *In Re Dowdrick*, 4 D & C3d 681 (1978), and *In Re Richardson*, 23 D & C3d 199 (1982), both involved the petitions of pre-operative transsexuals who, aside from receiving hormone and physiological treatments, had not undergone any permanent surgeries designed to alter the petitioners' appearances.[2] Holding that "there is no guarantee that petitioner will have the surgical corrective sex change," the *Dowdrick* and *Richardson* courts denied the petitioners'

name change requests. *Dowdrick*, 4 D & C3d at 684.[3]

After reviewing the above caselaw, the court in the instant matter held that "absent reassignment surgery it would not comport with common sense, common decency and fairness to all concerned, especially the public, to allow a change of name at this juncture." Slip-op, 3/27/97 at 4. In essence, the court interpreted the caselaw from its sister courts as creating a bright-line test for determining when a transsexual may successfully petition for a name change.

■ The trial court's own interpretation is fundamentally flawed, however, for this petitioner has undergone permanent reconstructive surgeries whose only possible benefit is to advance his stated desire to become a woman in all respects. Accordingly, we believe the trial court's reading to be unnecessarily narrow and decline to adopt it.

■ Instead, we believe that the better-reasoned approach is to require such a petitioner to demonstrate that he or she is permanently committed to living as a member of the opposite sex. While proof of reassignment surgery would undoubtedly fulfill this criteria, the absence of such surgery does not automatically doom a petition to failure. Rather, the totality of each case's attendant circumstances must be evaluated in order to discern whether the petitioner is irretrievably committed to living as a person of the opposite gender. Therefore, we hold that, in cases in which a petitioner is seeking a change of name commensurate with a change of gender, each petition must be evaluated on a case-by-case basis to determine whether allowance of the name change would comport with good sense and fairness to all concerned.

---

2. As will be demonstrated in greater detail later in this opinion, *Dowdrick* and *Richardson* are factually distinguishable from the instant matter and, thus, of little persuasive value.

3. In denying the name change petition, the *Richardson* court stated as follows:

The point, however, as we see it is that we are being asked to lend the dignity of the court and the sanctity of the law to this freakish rechris-

tining. To place a female name on a male is to combine incompatibles, and to do so legally is to pervert the judicial process, which is supposed to act in a rational manner.

*Richardson*, 23 D & C3d at 201. In light of the above language, one must question whether, rather than applying the *Falcucci* standard, the *Richardson* court did not allow its personal beliefs and predilections to guide its decision.

In the instant matter, we are confronted with a factual scenario which is distinguishable from the three cases related above. It is true that petitioner has not undergone reassignment surgery; yet this fact alone cannot make this case analogous to *Dowdrick* and *Richardson*, for the instant petitioner has gone to much greater lengths than the *Dowdrick* and *Richardson* petitioners to permanently alter his gender and physical appearance. To-wit, in addition to hormone therapy, petitioner has had breast implants and facial reconstructive surgeries. These are irreversible and convince this Court that petitioner sincerely desires to live as a woman.

The standard that we enunciate today finds support in the decisions of our neighboring jurisdictions. In the name change petition *In re Anonymous*, 155 Misc.2d 241, 587 N.Y.S.2d 548 (1992), the New York City Civil Court refused to change a pre-operative transsexual's name where the petitioner failed to present competent medical and psychiatric evidence of a commitment to living as a member of the opposite sex. The Civil Court, however, granted the name change when the same petitioner, still pre-operative, submitted appropriate medical and psychiatric affidavits upon reapplication. *In re Rivera*, 165 Misc.2d 307, 627 N.Y.S.2d 241 (1995).

New Jersey has adopted a standard even more permissive. In its opinion of *In re Eck*, 245 N.J.Super. 220, 223, 584 A.2d 859, 860–61 (1991), the New Jersey Superior Court, Appellate Division held:

> Absent fraud or other improper purpose a person has a right to a name change whether he or she has undergone or intends to undergo a sex change through surgery, has received hormonal injections to induce physical change, is a transvestite, or simply wants to change from a traditional "male" first name to one traditionally "female," or vice versa.

While we, like the courts of New York, require competent evidence of the petitioner's commitment to the new gender, we agree with the New Jersey Superior Court's holding that a transsexual's right to a name change does not depend upon the completion of any specific surgical process.

After careful review, we find that the facts of the instant matter plainly reveal that petitioner has made a permanent and unassailable decision to live his life as a woman. As such, the concerns of the *Dowdrick* and *Richardson* courts are not presently applicable; for should the instant petitioner discontinue his hormone therapy, the fact remains that his surgeries have permanently altered his physical appearance from that of a man to that of a woman. Additionally, we find petitioner's twenty-two-year commitment to living as a woman to be highly persuasive evidence that the petition to change his name was not made capriciously or without regard to future developments.

Moreover, we must disagree with the trial court's determination that permitting a name change at this juncture would be unfair to the general public. The uncontroverted evidence adduced at the hearing proved that a legal name change would actually prevent the daily confusion and public confrontations which presently plague petitioner's dealings with the public.

While saddled with a male name and a female visage, petitioner must constantly convince the public that his name is "Brian." Should petitioner be allowed to change his name to "Lisa," however, the general public's outward perception of petitioner would be reaffirmed by petitioner's legal name. Thus, rather then perpetrating a fraud upon the public, the name change would eliminate what many presently believe to be a fraud; that is, that petitioner is a man.

In sum, we find that petitioner has amply demonstrated that he intends to live his life as a woman. For twenty-two years, petitioner's visage has been such that, but for those times when he must present official identification, he convincingly passes among the general public as a woman. As such, we find that a legal name change would benefit both petitioner and the public at large and, in accordance with good sense and fairness to all concerned, should have been granted.

Order reversed; case remanded with instructions for the court to grant the petition seeking a legal name change from "Brian

Harris" to "Lisa Harris"; jurisdiction relinquished.

Concurring statement by POPOVICH, J.

Dissenting statement by SAYLOR, J.

POPOVICH, Judge, concurring:

While I join in the result offered by the majority, I write separately to express my own reasons for granting appellant's petition for a legal name change from "Brian Harris" to "Lisa Harris." The majority determined that appellant has a right to a name change because appellant made a permanent and invariable commitment to live his life as a woman. However, I am convinced that this determination is not necessary in order to avail appellant of his right to change his name.

In *Commonwealth v. Goodman*, 544 Pa. 339, 676 A.2d 234 (1996), our supreme court set forth the legislative history of Pennsylvania's Judicial Change of Name statute, 54 Pa.C.S. § 701, as follows:

> The primary purpose of the Judicial Change of Name Statute ... is to prohibit fraud by those trying to avoid financial obligations. This intent is reflected in the penalty provision of the statute, which applies only to 'person[s] violating the provision of this chapter for the purpose of avoiding payment of taxes or other debts.'

*Goodman, supra,* 676 A.2d at 236; *See* 54 Pa.C.S. §§ 701, 705. Further, the supreme court stated that the Judicial Change of Name statute is entirely procedural in nature and provides methods by which an individual may change his name on a permanent basis. *Goodman, supra.*

This court must determine whether a petitioner has complied with the statutory requirements and to ensure that the person has no *fraudulent intentions* in changing his name. This is where the inquiry ends. Herein, appellant filed an unopposed petition for change of name in accordance with the statutory requirements of 54 Pa.C.S.A. § 701 *et seq.* There is no evidence to suggest that appellant was attempting to change his name to avoid any financial obligation. In light of the statutory language and the legislature's intent, I believe that appellant's petition should be granted without probing into appellant's sex or his desire to express himself in the manner of his choosing.

In reaching this conclusion, I find the reasoning in *In re Eck,* 245 N.J.Super. 220, 584 A.2d 859 (1991), very persuasive. A change of name statute "is to be construed consistently with and not in derogation of the common law." *Eck, supra.* At common law, an individual is free at any time to adopt and use any name, if such name is used consistently, nonfraudulently and exclusively. *In the Matter of Montenegro,* 365 Pa.Super. 98, 528 A.2d 1381 (1987); 54 Pa.C.S.A. § 701(b). "Absent fraud or other improper purpose a person has a right to a name change whether he or she has undergone or intends to undergo a sex change ... or simply wants to change from a traditional "male" first name to one traditionally "female"[.]" *Eck, supra.*

Moreover, if parents have an absolute right to choose to name their male child an obvious "female" name at birth, it is illogical that an adult does not have the same right to change his name in the future if he so desires, whatever the name shall be, provided that the person does not seek the change for fraudulent purposes.

SAYLOR, Judge, dissenting:

A trial court has wide discretion in deciding whether to grant or refuse a petition for change of name. *Petition of Falcucci,* 355 Pa. 588, 50 A.2d 200 (1947). Because I do not discern any abuse of such discretion by the en banc trial court in the present matter, I respectfully dissent.

Although it is true that a person may at any time informally adopt and use any name, provided that such name is used consistently, nonfraudulently and exclusively, *see* 54 Pa. C.S.A. § 701(b), if a person wishes to formally change his or her name, court approval must be obtained pursuant to 54 Pa.C.S.A. § 701(a). Because such petitions for a formal change of name implicate the judicial process in sanctioning the petitioner's choice of name, I believe that the trial court properly considered not only the literal requirements of the name change statute but also public policy interests.

Here, petitioner is a pre-operative transsexual. Although petitioner receives routine hormone therapy, has undergone permanent facial reconstructive surgery, and has had breast implants, the fact remains that he has not yet had gender reassignment surgery, which involves the removal of the male genitalia and the construction of female genitalia. Therefore, although he possesses some of the outward physical characteristics of a female, his physical transformation to the opposite gender is not yet complete. To permit him to adopt an obviously female name would be to perpetuate a fiction, since the fact remains that petitioner is anatomically a male until he undergoes reassignment surgery. Only after such procedure would petitioner be a female, physically as well as psychologically. *See, Matter of Anonymous,* 57 Misc.2d 813, 293 N.Y.S.2d 834 (1968) (court granted name change from male name to female name where petitioner was a male-to-female transsexual who had already undergone sex reassignment surgery and was both anatomically and psychologically female "in fact"). To judicially sanction a pre-operative male transsexual's adoption of an obviously female name would grant legal recognition to a physiological fiction.

Accordingly, I would affirm the trial court's denial of the petition for legal change of name.