OPINION
Appellants, Jennifer Lane Bicknell ("Bicknell") and Belinda Lou Priddy ("Priddy"), appeal a decision of the Butler County Probate Court which denied appellants' petitions to change their names.
Appellants filed individual applications with the Butler County Probate Court, requesting to have their surnames changed to the name "Rylen," which is a combination of some of the letters of their last names. The applications of both women provided identical reasons for requesting the name change:
 Applicant desires to legally have the same last name as her long[-] term partner of nine (9) years. This name change will only add to the level of commitment they have for each other, as well as that of their unborn child. Also so that this tender and new family will have a unified name in the eyes of the law.
A hearing was held before a magistrate on February 28, 2000. At the hearing, appellants testified that they have been living together in a committed relationship for nine years. They have made a verbal commitment to each other and have exchanged rings to signify the commitment. Appellants also testified that Bicknell underwent artificial insemination and is expecting a child. They stated that they are planning to parent the child equally and consider themselves both mothers to the child. Priddy testified that she also plans to have a child in the future.
The magistrate issued a written decision on March 1, 2000, denying both name change petitions. Appellants filed objections to the magistrate's decision on March 14, 2000. The trial court granted a continuance to allow appellants to submit additional evidence. Appellants presented the testimony of Patricia Williams at a hearing held on May 16, 2000. Ms. Williams, a clinical social worker, testified that a common surname helps with family identity and can make social situations less difficult for children.
The trial court issued a written decision denying appellants' name change petitions on June 16, 2000. The trial court found that it was not "reasonable and proper" to change the names of unmarried cohabitants because to do so would give an "aura of propriety and official sanction" to their cohabitation.
Appellants appeal the trial court's decision and raise the following three assignments of error:
 Assignment of Error No. 1: THE TRIAL JUDGE ERRED TO THE PREJUDICE OF THE APPLICANT-APPELLANTS IN FAILING TO APPLY THE CORRECT LEGAL STANDARD FOR ALLOWING NAME CHANGES.
 Assignment of Error No. 2: THE TRIAL JUDGE ERRED IN FINDING THAT ALLOWING THE APPLICATIONS FOR CHANGE OF NAME IS AGAINST PUBLIC POLICY.
 Assignment of Error No. 3: THE TRIAL JUDGE'S DECISION DENYING MS. PRIDDY AND MS. BICKNELL THE USE OF THE NAME CHANGE STATUTE IS UNCONSTITUTIONAL.
An appellate court may only reverse a trial court's decision on a name change application if the trial court abused its discretion. In re Hall
(1999), 135 Ohio App.3d 1, 3. The term "abuse of discretion" implies that the court's decision is unreasonable, arbitrary or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd.
(1993), 66 Ohio St.3d 619, 621.
In their first assignment of error, appellants contend that the trial court applied an incorrect standard by considering public policy and by not considering the best interest of the child. Appellants first argue that the only ground for denial of a name change petition occurs when the name change is requested for fraudulent purposes.
In Ohio, there are two ways in which a person may change his name. First, a person may change his name at common law by simply adopting another name. Pierce v. Brushart (1950), 153 Ohio St. 372, 380. InPierce, the Ohio Supreme Court stated the common law standard for a name change: "In the absence of a statute to the contrary, a person may ordinarily change his name at will, without any legal proceedings, merely by adopting another name. He may not do so, however, for fraudulent purposes." Id.
Second, a person may obtain a statutory name change pursuant to procedure outlined in R.C. 2717.01. The statutory name change procedures are in addition to the common law method of effecting a name change and do not abrogate it. State ex rel. Robinson v. Clark (1994),91 Ohio App.3d 627, 629; In re Paxson (June 30, 1992), Scioto App. No. CA91-2008, unreported, 1992 WL 154139.
The statutory name change provision states:
 A person desiring a change of name may file an application in the probate court of the county in which the person resides. The application shall set forth that the applicant has been a bona fide resident of that county for at least one year prior to the filing of the application, the cause for which the change of name is sought, and the requested new name.
 Notice of the application shall be given once by publication in a newspaper of general circulation in the county at least thirty days before the hearing on the application. The notice shall set forth the court in which the application was filed, the case number, and the date and time of the hearing.
 Upon proof that proper notice was given and that the facts set forth in the application show reasonable and proper cause for changing the name of the applicant, the court may order the change of name.
R.C. 2717.01(a).
Once the statutory application requirements have been met, the standard for granting a statutory name change is whether the change is "reasonable and proper." R.C. 2717.01(a). Since R.C. 2717.01 provides that the court "may" order the name change, the statute vests discretion with the trial court in determining whether to grant the request.
Appellants contend that the trial court erred by considering whether the requested name changes were against public policy. Instead, they argue that the meaning of the term "proper" in relation to a statutory name change means only that the change is not requested for fraudulent reasons.
There is a dearth of case law in Ohio interpreting the statutory "reasonable and proper" standard for an adult name change. Recently, one court determined that a court should consider public policy issues when ruling on a name change petition. In re Name Change of Handley (P.C. 2000), 107 Ohio Misc.2d 24, 26-27. In Handley, the applicant requested to have his name judicially changed to Santa Claus. Id. The court found that the public has a proprietary interest in the name Santa Claus and that the requested name change would be against public policy. Id.
Courts in other states have included a review of public policy considerations when ruling on name change petitions. See Application ofSakaris (N.Y. Civil Court 1993), 610 N.Y.S.2d 1007, 1011; In the matterof the Application of Pirlamarla (N.J.Super.Ct. Law Div. 1985),504 A.2d 1238, 1241; In re Harris (Pa.Super.Ct. 1997), 707 A.2d 225,227; Lee v. Ventura County Superior Court (Cal.Ct.App. 1992),11 Cal.Rptr.2d 763, 768.
Although a person may change his name at common law as long as he/she does not do so with fraudulent intent, requesting a court to approve a name change requires additional considerations. A name change application becomes subject to judicial scrutiny because the applicant is requesting court approval of the name change. "An inevitable by-product of the statutory process is the result that the judicial imprimatur is placed upon the change of name lending it the aura of propriety and official sanction." Matter of Linda Ann A. (N.Y.Sup.Ct. 1984), 480 N.Y.S.2d 996,997. Because of these considerations, we find that the "reasonable and proper" standard provided in R.C. 2717.01 includes judicial scrutiny regarding whether a requested name change is consistent with public policy.
Appellants also contend that the trial court erred by not considering factors concerning the best interest of the child. In a proceeding to change the name of a minor child, the court is required to consider the best interest of the child in determining whether reasonable and proper cause has been established. In re Willhite (1999), 85 Ohio St.3d 28, paragraph one of the syllabus.
However, the facts of this case differ materially from those cases in which the best interest of the child must be considered. A review of Ohio cases requiring consideration of the child's best interest in a name change petition reveals that in each case the court was considering whether to change the name of an already-named child. See e.g., id., ErinC. v. Christopher R. (1988), 129 Ohio App.3d 290;; In re Budenz (1999),133 Ohio App.3d 359; In re Crisafi (1995), 104 Ohio App.3d 577; Bowen v.Thomas (1995), 102 Ohio App.3d 196. Appellants' petitions request that the court change their own names as adults. The petitions were not to change the name of an already-named child. Accordingly, as the request was to change the name of two adults, there was no best interest of a named child to be considered by the court. Appellants' first assignment of error is overruled.
In their second assignment of error, appellants contend that the trial court erred by finding that granting the name change petitions would be against public policy. The trial court found that Ohio public policy "promotes legal marriages and withholds official sanction from non-marital cohabitation." Appellants argue that there is no legislative public policy preventing unmarried people from sharing the same name.
However, a review of Ohio law reveals that there is both a legislative and judicial public policy promoting solemnized marriage. In 1991, the legislature abolished the recognition of common-law marriages. See R.C.3105.12. This statute provides that after 1991, "common law marriages are prohibited in this state, and the marriage of a man and woman may occur only in this state if the marriage is solemnized * * *[.]" R.C.3105.12(B)(1).
Even prior to the abolition of common law marriage by the legislature, it was not favored. The Ohio Supreme Court stated that "common-law marriage contravenes public policy and should not be accorded any favor; indeed it is quite generally condemned." In re Estate of Redman (1939),135 Ohio St. 554, 558. See, also, State v. Depew (June 29, 1987), Butler App. No. CA85-07-075, unreported, at 20.
Other courts have reiterated Ohio's long-standing public policy promoting marriage. In holding that restraints to marriage are generally disfavored, one court recently stated the principle that "[t]he union of two people in marriage has been the ultimate expression of commitment and love throughout this nation's history and has been the bedrock upon which our society has built and continues to build upon." Jordan v. Jordan
(1996), 117 Ohio App.3d 47, 50. Though recently courts may be less inclined to speak of the sanctity of marriage, it remains a basic social institution of the highest type and importance, in which society at large has a vital interest. Hempy v. Green (May 31, 1990), Franklin App. No. 89AP-1369, unreported, 1990 WL 72607 at *3, quoting Holloway v. Holloway
(1935), 130 Ohio St. 214, 216.
We find that there is support for the trial court's determination that Ohio law favors solemnized marriages and that cohabitation contravenes this policy. Accordingly, the trial court did not abuse its discretion by finding that court sanctioning of the use of the same surname by two unmarried cohabitants is against Ohio's public policy promoting marriage. Appellants' second assignment of error is overruled.
In their third assignment of error, appellants contend that the trial court's decision is unconstitutional. Specifically, appellants argue that the decision violates the Equal Protection Clause of the Constitution. Appellants argue that denying unmarried couples the opportunity to share a common surname bears no rational relationship to a legitimate governmental purpose.
The Equal Protection Clause prevents a state from treating people differently under its laws on an arbitrary basis. State v. Williams
(2000), 88 Ohio St.3d 513, 530. Unless a suspect class or fundamental right is involved, the action need only bear a rational relationship to a legitimate state interest. Id. A classification based on marital status does not implicate either a suspect class nor does it involve a fundamental right. Smith v. Shalala (1993), 5 F.3d 235, 239.
Appellants argue that Ohio courts do not recognize any public policy giving lesser rights to same-gender or unmarried couples raising children. Appellants are correct that a parent's sexual orientation or marital status does not automatically disqualify that person from obtaining custody or adopting a child. See In re adoption of Charles B.
(1990), 50 Ohio St.3d 88; Inscoe v. Inscoe (1997), 121 Ohio App.3d 396. However, the issue in this case is not appellants' parenting rights. Instead, the issue is whether the state has a legitimate interest in denying the name change petitions of couples who are unmarried.
Appellants also argue that denying unmarried couples the use of the name change statute denies use of the name change statute to all same-gender couples. Appellants argue that exclusion of people in same-gender relationships constitutes an unconstitutional status and that effectuating animus against a group of people cannot constitute a legitimate governmental purpose. In support of this argument, appellants cite Stemler v. City of Florence (6th Cir. 1997), 126 F.3d 856, andGlover v. Williamsburg School District (S.D.Ohio 1998), 20 F. Supp.2d 1160, cases which found it impermissible to discriminate on the basis of sexual orientation. While these cases stand for the proposition that animus cannot be the basis of a governmental action, appellant's argument is misplaced because there is no evidence the court's decision was based on animus or unconstitutional status.
The trial court's decision did not distinguish between unmarried heterosexual couples and unmarried homosexual couples. The trial court first looked at Ohio's public policy of promoting legal marriages and withholding official sanction from nonmarital cohabitation. The court then stated:
 The fact that these applications involve two women, instead of a man and a woman, does not change the principle in cases such as these. It would not be "reasonable and proper" for a court to change the last name of a woman living with a man whom she was not legally married, to the same last name as that of the man * * *. Similarly, it is not "reasonable and proper" for a court to change the last name of a woman living with a woman to whom she cannot legally marry, to the same last name as that of the other woman. Cohabitation is cohabitation, whether it involves a man and a woman, a woman and a woman, or a man and a man.
* * *
 The fact that the applicant can not legally marry her "long term partner" because they are both women does not alter the basic conclusion of law that this court finds to be true, i.e.
that it is not "reasonable and proper" to change the surnames of cohabiting couples, because to do so would be to give an "aura or propriety and official sanction" to their cohabitation.
The trial court's decision distinguished between married couples and unmarried couples on the basis of Ohio's public policy in favor of marriage. This distinction bears a rational basis for treating the two groups in different manners in order to promote a legitimate governmental interest. Appellants' third assignment of error is overruled.
In conclusion, we find that the trial court's decision is not unreasonable, arbitrary or unconscionable. Accordingly, the trial court's decision was not an abuse of discretion.
Judgment affirmed.
WALSH, J., concurs.
VALEN, J., dissents.